UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Trasielyn A.,<br><br>             Plaintiff,<br><br>v.<br><br>Kilolo Kijakazi, Acting Commissioner of Social Security,[1]<br><br>             Defendant. | Civil No. 3:21-CV-00253-TOF<br><br><br><br>September 12, 2022 |

## RULING ON PENDING MOTIONS

The Plaintiff, Trasielyn A.,[2] appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), rejecting her application for Disability Insurance ("DI") benefits under Title II of the Social Security Act. (Compl., ECF No. 1.) She has moved for an order reversing the decision of the Commissioner and awarding her DI benefits, or, in the alternative, remanding the case with instructions to reconsider the evidence and testimony and issue a new decision. (ECF No. 14, 14-1 at 15-16.) The Commissioner has moved for an order affirming the decision. (ECF No. 19.)

The Plaintiff makes several arguments, but the scope of this decision will be limited to her argument that the Administrative Law Judge ("ALJ") failed to adequately develop the

---

[1]     When the Plaintiff filed this action, she named the then-Commissioner of the Social Security Administration, Andrew Saul, as the defendant. (Compl., ECF No. 1.) Commissioner Saul no longer serves in that office. His successor, Acting Commissioner Kilolo Kijakazi, is automatically substituted as the defendant pursuant to Fed. R. Civ. P. 25(d). The Clerk of the Court is respectfully requested to amend the caption of the case accordingly.

[2]     Pursuant to Chief Judge Underhill's January 8, 2021 Standing Order, the Plaintiff will be identified solely by first name and last initial throughout this opinion. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

1

administrative record. (ECF No. 14-1, at 6-10.) Specifically, the Plaintiff argues that the ALJ had insufficient opinion evidence to formulate an RFC and thus should have acquired an opinion from a treating provider or contacted the consultative examiner to obtain a more robust opinion. (*Id.*) The Commissioner responds that the record was sufficient for the ALJ to render a decision. (ECF No. 19-1, at 6-7.)

Having carefully considered the parties' submissions, and having carefully reviewed the entire administrative record, the Court agrees with the Plaintiff that, under the facts of this case, the ALJ failed to develop the record by not obtaining sufficient opinion evidence. The medical records were not extensive enough nor did they contain sufficient information about the Plaintiff's functional abilities to relieve the ALJ of her responsibility to acquire and assess the opinion of a treating provider.

The Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 14) is **GRANTED** to the extent that she seeks vacation of the Commissioner's decision and remand for further administrative proceedings. Because she has not come forward with "persuasive proof" of disability, her motion is **DENIED** to the extent that she seeks an order reversing and remanding solely for an award and calculation of benefits. (*See* discussion, Section IV *infra.*) The Commissioner's Motion for an Order Affirming the Decision (ECF No. 19) is **DENIED**.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

On November 22, 2019, the Plaintiff filed an application for Title II DI benefits. (R. 20, 80.) She claimed that she could not work because of levoscoliosis, degenerative disc disease resulting from a spinal fusion performed in 1993, obsessive-compulsive disorder, and anxiety. (R.

80-81, 205.) She later told disability examiners that it was just her spinal issues preventing her from working. (R. 83, 96.) She alleged a disability onset date of April 1, 2019.[3] (R. 160.)

On April 14, 2020, the Social Security Administration ("SSA") found that the Plaintiff was "not entitled to disability benefits." (R. 104.) The SSA again denied her claim on reconsideration on June 18, 2019. (R. 114.) The Plaintiff then requested a hearing before an ALJ, and on September 1, 2020, Judge I.K. Harrington held a hearing. (R. 38-79.) The Plaintiff's counsel, Kerin M. Woods, appeared on her behalf. (R. 39.) The ALJ also heard testimony from a vocational expert ("VE"), Ruth Baruch. (R. 39.)

On September 4, 2020, the ALJ issued an unfavorable decision. (R. 17-37.) As will be discussed below, ALJs are required to follow a five-step sequential evaluation process in adjudicating Social Security claims (*see* discussion, Section II *infra*), and ALJ Harrington's written decision followed that format. At Step One of her analysis, she found that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 1, 2019. (R. 23.) At Step Two, she found that the Plaintiff suffers from the severe impairments of obesity and degenerative disc disease. (R. 23-24.) She found the Plaintiff's mental impairments to be non-severe, as the Plaintiff had not sought formal mental health treatment and her anxiety was stable on medication. (*Id.*) She also discussed the Plaintiff's hyperlipidemia, hypothyroidism, and vitamin D deficiency, but found these conditions to be non-severe as well. (R. 23.)

At Step Three, the ALJ concluded that the Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the "Listings" – that is, the

---

[3] The relevant period under review for Plaintiff's DI benefits runs from April 1, 2019, her alleged onset date, through the date of the ALJ's decision, September 4, 2020. 20 C.F.R. §§ 404.130, 404.315(a); *Arnone v. Bowen*, 882 F.2d 34, 37 (2d. Cir. 1989). The Plaintiff's date last insured for DI benefits is December 31, 2024. (R. 21.)

impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) She then determined that, notwithstanding her impairments, the Plaintiff retained the residual functional capacity to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except that she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She must never climb ladders, ropes or scaffolds.

(R. 25-26.) At Step Four, the ALJ found that the Plaintiff was capable of performing her past work as an office manager. (R. 31.) At Step Five, she relied on VE Baruch's testimony to conclude that there are a significant number of additional jobs in the national economy that the Plaintiff could perform, such as price marker, electrical assembler, and mail sorter. (R. 31-32.) In summary, she found that the Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset date of April 1, 2019.

On September 28, 2020, the Plaintiff requested that the Appeals Council review the ALJ's decision. (R. 158-59.) The Plaintiff also submitted to the Appeals Council a medical opinion from Dr. Kenneth Paonessa, her treating orthopedist, that her counsel acquired after the ALJ had rendered her decision. (R. 7-11.) Nevertheless, the Council found "no reason under our rules to review the [ALJ']s decision" and, therefore, denied the Plaintiff's request for review. (R. 1.) It added that if the Plaintiff wished to contest the denial, she could "ask for court review . . . by filing a civil action." (R. 2.)

The Plaintiff then filed this action on February 26, 2021. (Compl., ECF No. 1.) The Commissioner answered the complaint by filing the administrative record on June 21, 2021. (ECF No. 12; *see also* D. Conn. Standing Scheduling Order for Social Security Cases, ECF No. 4, at 2 (stating that the Commissioner's filing of the administrative record is "deemed an Answer (general denial) to Plaintiff's Complaint").) On August 19, 2021, the Plaintiff filed her motion for an order reversing or remanding the Commissioner's decision. (ECF Nos. 14.) On November 16, 2021, the Commissioner filed a motion for an order affirming that decision. (ECF No. 19.) The Plaintiff

has not filed a reply brief, and her time for doing so has expired. (ECF No. 4, at 4.) The parties' motions are therefore ripe for decision.

**II. APPLICABLE LEGAL PRINCIPLES**

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'" *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)). To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)). At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ." *Id.* At Step Three, the ALJ then evaluates whether the claimant's disability "meets or equals the severity" of one of the "Listings" – that is, the specified impairments listed in the regulations. *Id.* At Step Four, the ALJ uses a residual functional capacity ("RFC") assessment to determine whether the claimant can perform any of her "past relevant work." *Id.* At Step Five, the ALJ addresses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience." *Id.* The claimant bears the burden of proving her case at Steps One through Four. *Id.* At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). Its role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error. "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . .") (citations omitted). Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (quotation marks and citations omitted). When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

An ALJ does not receive the same deference if she has made a material legal error. In other words, district courts do not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision."

6

*Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

**III.   DISCUSSION**

The Plaintiff argues that (1) the RFC is not consistent with the objective medical findings or supported by substantial evidence, (2) the ALJ failed to adequately develop the administrative record, (3) the ALJ improperly evaluated the Plaintiff's testimony, and (4) the ALJ erred in her analysis at Step Four and Five by not including all of the Plaintiff's limitations in the hypothetical posed to the VE.  (ECF No. 14-1.)  Because the second issue is a threshold issue, *see, e.g.*, *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 261 (S.D.N.Y. 2016), it makes sense to discuss it first.

The Plaintiff argues that the ALJ failed to adequately develop the record because she did not acquire a medical opinion from her treating physician, Dr. Kenneth Paonessa, or seek clarification from the consultative examiner, Dr. Rosalinda Gaona.  (ECF No. 14-1, at 6.)  The ALJ relied in varying degrees on Dr. Gaona and on two medical consultants, but the record contained no opinions on the Plaintiff's functional limitations from a treating provider.[4]  Dr. Gaona examined the Plaintiff once and did not review any other record evidence.  (R. 30.)  She summarized the Plaintiff's reported medical conditions, symptoms, daily activities, and performed a physical exam.  (R. 548-51.)  In particular, under "impression," she noted the Plaintiff's history and reports of scoliosis with a spinal fusion from the twelfth thoracic vertebra to the third lumbar vertebra and chronic right sided low back pain with lumbar radiculopathy.[5]  (R. 551.)  She

---

[4]   As noted above, and as will be discussed further below, the Plaintiff did place such an opinion before the Appeals Council.  (R. 7-11.)

[5]   "Radiculopathy refers to the symptoms produced by the pinching of a nerve root in the spinal column," including "pain, weakness, numbness and tingling."  *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 635 (S.D.N.Y. 2019) (internal quotation marks omitted).

7

ultimately concluded that the Plaintiff would be "able to sit, stand, walk, bend and climb. She is limited in these activities [due] to back pain with [right lower extremity] radiculopathy. She is able to reach, push, pull, lift, carry and grasp. There are no fine motor deficits. Her ability to push, pull, lift and carry would also be limited due to back pain with [right lower extremity] radiculopathy." (*Id.*) There was no further clarification on the extent of the Plaintiff's limitations. The ALJ found the opinion to be minimally persuasive, noting that the opinion was vague, did not provide a function-by-function analysis of her work-related limitations, and was based on a one-time examination. (R. 30.)

The first medical consultant, Dr. Richard Papantonio, based his opinion on the available record evidence at the time[6] and on Dr. Gaona's report. (R. 80-91.) He summarized the Plaintiff's reported activities of daily living and the medical record evidence, emphasizing her history of scoliosis, spinal fusion, spinal pain, chronic radiculopathy, decreased right lower extremity strength, normal upper extremity strength, and normal gait. (R. 29, 85-86.) He opined that the Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk for about six hours in a workday, sit for more than six hours in a workday, climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; but concluded that she should never climb ladders, ropes, or scaffolds. (R. 88.) The ALJ found the opinion persuasive, explaining that the opinion was consistent with and supported by the records and their "detailed explanations" of the relevant clinical evidence. (R. 29.)

---

[6]     Dr. Papantonio issued his report on April 13, 2020, and the latest medical record cited was from March 13, 2020. His review thus did not include the Plaintiff's physical therapy records (Ex. 13F), as that treatment did not begin until August 2020, nor did it include all of Dr. Paonessa's treatment records (Ex. 11F), as those records cover July 10, 2019, to May 11, 2020. The ALJ, however, did receive this evidence.

The second medical consultant, Dr. Benjamin Weinberg, conducted a substantially similar analysis, but also relied on new records from Dr. Paonessa's office. (R. 94-100.) He reached the same conclusion concerning the Plaintiff's functional abilities but found that she could sit for about six hours in a workday, instead of more than six hours. (R. 98-99.) The ALJ similarly found his opinion persuasive. (R. 29.) The ALJ did not rely on or acquire any other medical opinions on the Plaintiff's functional limitations.

After the ALJ made her decision, the Plaintiff submitted an opinion from Dr. Paonessa to the Appeals Council. Dr. Paonessa wrote that he had been seeing the Plaintiff for her spinal issues every six months since November 2017. (R. 7.) In contrast to the medical consultants, Dr. Paonessa opined that the Plaintiff could only stand or walk for about two hours in a workday and sit for about four hours; that she would need a job where she could switch from sitting, standing, or walking at will; that she would need two unscheduled breaks a day in addition to the normally permitted breaks taken every two hours; that she could occasionally lift less than ten pounds, rarely lift ten pounds, and never lift twenty pounds; and that she could rarely twist, stoop, bend, or crouch. (R. 8-9.)

An ALJ has an affirmative obligation to develop a claimant's complete and accurate medical record. "[T]he Commissioner of Social Security . . . shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability." 42 U.S.C. § 423(d)(5)(B); *see also Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citation omitted) (noting that a "hearing on disability benefits is a non-adversarial proceeding," and as such, "the ALJ generally has an affirmative obligation to develop the administrative record"). An ALJ's failure to comply with this mandate is legal error. *Rose v. Comm'r of Soc. Sec.*, 202 F. Supp. 3d 231, 239 (E.D.N.Y. 2016). Whether the ALJ has met her

duty to develop the record is a threshold question that must be addressed before the court can consider whether the Commissioner's final decision is supported by substantial evidence. *Craig*, 218 F. Supp. 3d at 261.

In discharging this duty, the ALJ must ordinarily acquire medical opinions from treating providers as to the claimant's functional abilities. *Darden v. Saul*, No. 3:19-cv-891 (SRU), 2020 WL 6293023, at *10 (D. Conn. Oct. 26, 2020) ("Courts in this district have repeatedly concluded that the ALJ has a duty to request the opinions of a claimant's treating physicians."); *Dimitriadis v. Barnhart*, No. 02-cv-9203 (DC), 2004 WL 540493, at *9 (S.D.N.Y. Mar. 17, 2004) ("[T]he ALJ must obtain the treating physician's opinion regarding the claimant's alleged disability."). "What is valuable about the perspective of the treating physician and what distinguishes this evidence from the examining physician and from the ALJ is his opportunity to develop an informed opinion as to the physical status of a patient." *Hallett v. Astrue*, No. 3:11-cv-1181 (VLB), 2012 WL 4371241, at *6 (D. Conn. Sept. 24, 2012).

Failure to obtain opinions from a treating provider, however, does not result *per se* in an incomplete record. *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33-34 (2d Cir. 2013) (summary order) ("[R]emand is not always required when an ALJ fails in his duty to request opinions, particularly where . . . the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity.") (internal citations omitted); *see also Sanchez v. Colvin*, No. 13-cv-6303 (PAE), 2015 WL 736102, at *5 (S.D.N.Y. Feb. 20, 2015) ("[I]t is not *per se* error for an ALJ to make a disability determination without having sought the opinion of the claimant's treating physician."). "The question before the court, then, is whether, given the specific facts of this case, the administrative record before the ALJ . . . , although lacking the opinion of [a] treating physician, was sufficiently comprehensive to permit an informed finding by

10

the ALJ. . . . The approach to this question focuses on circumstances of the particular case, the comprehensiveness of the administrative record, and, at core, whether an ALJ could reach an informed decision based on the record." *Moreau v. Berryhill*, No. 3:17-cv-00396 (JCH), 2018 WL 1316197, at *7 (D. Conn. Mar. 14, 2018) (internal citations and quotation marks omitted).

Yet unlike the ALJ in *Tankisi*, the ALJ in this case did not have evidence of the Plaintiff's functional limitations sufficient to excuse the lack of a treating physician opinion. The Second Circuit emphasized two aspects of the record in *Tankisi* that are not present here. First, it noted that while the administrative record lacked a formal opinion on the plaintiff's RFC from a treating physician, it did include an informal assessment of her limitations from a treating physician. *Tankisi*, 521 F. App'x at 34. "Some courts have therefore distinguished *Tankisi* and remanded for development of the record in cases where the treating physician's notes did not include an informal assessment of the claimant's RFC." *Moreau*, 2018 WL 1316197, at *8 (collecting cases). For example, the Second Circuit affirmed an ALJ's decision despite the lack of a treating source opinion, where the medical history and treatment notes "contained multiple psychological assessments" of the plaintiff. *Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (summary order).

In this case, the record before the ALJ contained little functional information from Dr. Paonessa. His office's treatment records total only twenty-five pages, and primarily consist of symptoms, diagnoses, test results, and treatment plans. (R. 553-77.) Only two of the pages offer any information on the Plaintiff's functional abilities. The only functional assessment provided is as follows: "Current functional limitations, walking long distances, sitting, rising, bending, standing on the move. Resting pain level: 4/10. Pain level with activity: 9/10. . . . Strength and function consistent with [diagnosis]. Patient presents with stable clinical presentation. . . .

11

Musculoskeletal [range of motion] and strength were assessed and found to be limited. . . . Patient has limited tolerance to static positions and pain is aggravated with bending and lifting ADLs that greatly impair functional activities. . . . Primary functional limitations: mobility, walking and moving around, ongoing skilled intervention is medically necessary." (R. 556-57.) These minimal records "do not contain assessments of the scope of [the plaintiff's] work-related capabilities or limitations." *Alamo v. Berryhill*, No. 3:18-cv-00210 (JCH), 2019 WL 4164759, at *6 (D. Conn. Sept. 3, 2019). Equally importantly, they are insufficient to allow the medical consultants or the ALJ to determine whether the Plaintiff can perform the demands required of light work for a full workday over an entire workweek. *See Faussett v. Saul*, No. 3:18-cv-738 (MPS), 2020 WL 57537, at *5 (D. Conn. Jan. 6, 2020) (remanding where treating physician records "do not indicate how long the plaintiff can sit, stand, or walk").

Second, *Tankisi* emphasized a "voluminous record . . . adequate to permit an informed finding by the ALJ." 521 F. App'x at 34. Reflecting this emphasis, the court in *Martinez v. Berryhill* found that the medical record was "replete with notations and reports from treating physicians that offer insight into how [the plaintiff's] back impairment impacted his ability to 'undertake the activities of daily life.'" No. 3:17-cv-843 (SRU), 2019 WL 1199393, at *11 (D. Conn. Mar. 14, 2019) (citing *Guillen v. Berryhill*, 697 F. App'x 107, 109 (2d Cir. 2017) (summary order)). The medical record here, by contrast, consists of only 320 pages (R. 294-613), and the overwhelming majority of those records do not illuminate how the Plaintiff's medical conditions limit her work-related functions.

Even when the medical record is much more voluminous than it is here, "the 'real import lies in what those . . . pages say, not the mere fact the records exist.'" *Vecchitto v. Saul*, No. 3:19-cv-00726-TOF, 2020 WL 4696791, at *5 (D. Conn. Aug. 13, 2020) (quoting *Holt v. Colvin*, No.

12

3:16-cv-01971 (VLB), 2018 WL 1293095, at *7 (D. Conn. Mar. 13, 2018)). Here, only two of the thirteen medical exhibits offer any functional assessments or useful insight into how the Plaintiff's conditions impact her ability to undertake the activities of daily life – the records from her treating orthopedist, Dr. Paonessa, and her physical therapy records. Dr. Paonessa's records only cover five visits and consist of twenty-five pages. (R. 553-77.) The only functional assessment they provide is the brief notations quoted above. The physical therapy records only cover one week of treatment and consist of fourteen pages. (R. 600-13.) They include one functional assessment from her initial evaluation appointment, which appears to be self-reported by the Plaintiff. (R. 600.) The other record evidence includes records from her initial spinal surgery in 1993 (R. 294-307); 103 pages covering only two days from a hospital stay in 2018 when her back problems first intensified (R. 308-410); records from her primary care providers (R. 433-83, 578-99), which, to the extent that they concern her back problems, only include symptoms and treatment plans (*see e.g.*, R. 440, 442, 457); several radiology and imaging reports (R. 411-32, 484-97); and emergency department records from an unrelated health issue. (R. 498-547.) "The critical point is that the claimant's medical records must contain the sorts of nuanced descriptions and assessments that would permit an outside reviewer to thoughtfully consider the extent and nature of her impairments and their impact on her RFC." *Vecchitto*, 2020 WL 4696791, at *4 (quoting *Sanchez*, 2015 WL 736102, at *5) (internal quotation marks omitted). These records do not provide sufficient information on the Plaintiff's functional limitations to permit the ALJ to make an "informed decision based on the record." *Moreau*, 2018 WL 1316197, at *7.

Reports from consultative examiners and state agency consultants can sometimes help fill these gaps, *see Rivera v. Berryhill*, No. 3:16-cv-01842 (JAM), 2018 WL 1521824, at *5 (D. Conn. Mar. 28, 2018), but "the presence of a consulting examiner's report does not necessarily indicate

13

that the record is robust enough to support the ALJ's decision without an opinion from a treating source." *Moreau*, 2018 WL 1316197, at *8. "In determining whether the opinions of these consulting physicians constitute a complete record, the court must assess the quality and scope of these opinions, not merely the quantity." *Alamo*, 2019 WL 4164759, at *6. In this case, the examiner's and consultants' opinions lack the requisite quality and scope. The consultative examiner was not able to review any medical records and based her conclusions on a single examination. (R. 30, 548-51.) The ALJ correctly noted that her report was "vague and does not provide a function-by-function analysis of [the Plaintiff's] work-related limitations." (R. 30.) Further, the Second Circuit has cautioned that "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013). The insufficiency of the state agency medical consultants was then further compounded by these limitations and the lack of functional information in the record.

In sum, the record before the ALJ did not offer sufficient "insight into how [the Plaintiff's] impairments affect or do not affect her ability to work, or her ability to undertake her activities of everyday life." *Guillen*, 697 F. App'x at 109. Thus, the record was not sufficient for the ALJ to render an informed decision.

An implication of this holding is that the record was insufficient to *find* disability as well as to *deny* it. The Plaintiff seeks an order remanding her case solely for an award of benefits (ECF No. 14-1, at 15), but to enter such an order, the Court must find "persuasive proof" of the claimant's disability such that "a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). Precisely because the record is so scant with

respect to the Plaintiff's functional limitations, it contains no such "persuasive proof."[7]  Remand for calculation of benefits would therefore be inappropriate.

IV.  **CONCLUSION**

When a court concludes that an ALJ failed to develop the record, a plaintiff's additional arguments on appeal need not be addressed. *Mungin v. Saul*, No. 3:19-cv-233 (RMS), 2020 WL 549089, at *10 (D. Conn. Feb. 4, 2020) ("The Court declines to address the plaintiff's remaining arguments because upon remand and after a de novo hearing, [the ALJ] shall review this matter in its entirety.") (internal quotations omitted) (citing *Faussett v. Saul*, 2020 WL 57537, at *5 ); *see also Delgado v. Berryhill*, No. 3:17-cv-54 (JCH), 2018 WL 1316198, at *19 (D. Conn. Mar. 14, 2019) (holding that because the case is "already being remanded for other reasons," and "because [the plaintiff's] RFC may change after full development of the record," the ALJ is likely to need to reconsider the other steps in the five-step analysis)).  On remand, the ALJ should address the additional claims of error not discussed by the district court. *Pacheco v. Saul*, No. 3:19-cv-00987 (WIG), 2020 WL 113702, at *8 (D. Conn. Jan. 10, 2020) ("On remand, the Commissioner will

---

[7]  The Plaintiff references the Medical Source Statement from Dr. Paonessa that she submitted at the Appeals Council stage. (ECF No. 14-1, at 8-9) (citing R. 7-11).  If that statement were to be entirely credited, it might demonstrate an inability to work at the level of the ALJ's RFC.  (*See* R. 7-11) (stating that the Plaintiff can never lift twenty pounds, cannot stand for more than two hours in an eight-hour workday, *etc.*).  But the Commissioner identifies reasons for regarding the statement as unpersuasive, including the fact that "the doctor . . . did not cite to any specific medical finding" in support of the claimed limitations.  (ECF No. 19-1, at 12.)

The Commissioner devotes a portion of her brief to the "materiality" of Dr. Paonessa's statement. (*Id.* at 12-13.)  She argues that the statement is not "material" evidence under the rule of *Tirado v. Bowen*, 842 F.2d 595 (2d Cir. 1988), and that the Appeals Council therefore acted correctly when it declined to consider it.  Yet because the Court concludes that the record was insufficient to sustain the ALJ's decision with or without the statement – and because it has rejected any veiled suggestion by the Plaintiff that the statement provides "persuasive proof" of disability – there is no need to address the materiality issue, or the larger question of whether the statement should have been considered by the Appeals Council.  The ALJ shall consider the statement on remand.

15

address the other claims of error not discussed herein."); *see also Moreau v. Berryhill*, 2018 WL 1316197, at *4 ("Because the court finds that the ALJ failed to develop the record, it also suggests that the ALJ revisit the other issues on remand, without finding it necessary to reach whether such arguments would themselves constitute legal error justifying remand on their own.").

For the reasons stated above, the Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 14) is **GRANTED** to the extent that it seeks an order remanding the case for further administrative proceedings, and **DENIED** to the extent that it seeks an order remanding the case solely for a calculation and award of benefits. The Commissioner's Motion for an Order Affirming the Decision (ECF No. 19) is **DENIED**. The Commissioner's decision is vacated and the case is remanded for further administrative proceedings consistent with this opinion.

This is not a recommended ruling. The parties consented to the jurisdiction of the undersigned Magistrate Judge, who may therefore direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. (ECF No. 9.) Appeals may be made directly to the appropriate United States Court of Appeals. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c). The Clerk of the Court is respectfully directed to enter judgment in favor of the Plaintiff, and to close the case. It is so ordered.

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge
